lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-40095-06-JAR |
| ) | |
| KWAN LAP YU, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER SETTING ASIDE RELEASE ORDER AND DETAINING DEFENDANT

On January 24, 2008, a Second Superseding Indictment charged defendant Kwan Lap Yu with one count of conspiracy to distribute cocaine, methamphetamine, Ecstacy and marijuana, as well as three counts of possession with intent to distribute the same. On February 14, 2008, a detention hearing was held before the Honorable Maria-Elena James, United States Magistrate Judge for the Northern District of California. Judge James denied the government's motion for detention and issued an order granting pre-trial release to defendant. Judge James stayed her order until 9:30 a.m. on Tuesday, February 19, 2008. Later that day, this Court granted the government's Motion for Review and Stay of the Release Order (Doc. 144). The release order requires defendant to post a bond in the amount of $2 million, secured by $1.5 million in posted property.

The government's Motion for Review (Doc. 147) came on for hearing before this Court

on May 13, 2008.[1]  Defendant Kwan Lap Yu appeared in person and by counsel, Mark Bennett.  The government appeared by Assistant United States Attorney Anthony Mattivi.  At the conclusion of the hearing, the Court took the matter under advisement.  Having considered the applicable law and the evidence presented at the hearing and by proffer, the Court is now prepared to rule on the government's Motion for Review.  For the reasons set forth in detail below, the Court grants the government's motion and the order setting conditions of release for defendant Yu is reversed and set aside.

*Background*

On June 27, 2004, two Chinese nationals driving a black Lexus were stopped on Interstate 70 by the Russell County, Kansas Sheriff's Department for a traffic violation.  As the deputy was about to conduct a consent search of the vehicle's trunk, the driver, a woman named Cui Qin Zhang, drove away at a high speed, with her passenger, Shao Mou Chen.  The two led the deputy on a high-speed chase that ended when the vehicle crashed.  Zhang and Chen were thrown from the vehicle, as were quantities of controlled substances.  Troopers from the Kansas Highway Patrol investigated the accident and searched the car, finding fifteen kilograms of cocaine and 69,482 dosage units of ecstacy.

Zhang was charged with drug-related offenses from the stop and the accident.  The case was tried to a jury and Zhang was found guilty and eventually sentenced to fifteen years in prison.  Chen pled guilty to similar charges, testified against Zhang at trial, and was sentenced to 81 months' imprisonment.

On December 28, 2005, defendants Feng and Yuan were indicted for conspiracy to

---

[1] This delay is attributed to the length of time necessary for the United States Marshal Service to transport defendant from the Northern District of California to the District of Kansas.

possess and distribute, and possession with intent to distribute, the drugs found in the Lexus driven by Zhang, as well as for 139 marijuana plants.

On January 24, 2008, a Second Superseding Indictment (Doc. 109) added additional defendants, including Yu, and charged one count of conspiracy to distribute cocaine, methamphetamine, Ecstacy and marijuana, as well as three counts of possession with intent to distribute the same. On January 30, 2008, Yuan entered a plea of guilty to all counts charged.

*Applicable Law*

The government may seek review of a magistrate judge's order of release.[2] Under 18 U.S.C. § 3145(b), this Court's review of the magistrate judge's decision to release defendant pending trial is *de novo*.[3] A district court must "make its own determination if pretrial detention is proper or set conditions of release" and "ultimately decide the propriety of detention without deference to the magistrate judge's conclusion."[4] *De novo* review does not require a *de novo* evidentiary hearing.[5]

Under the Bail Reform Act of 1984, the court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community."[6] In making this determination, the court must consider the factors found in 18

---

[2]*See* 18 U.S.C. § 3145(a)(1).

[3]*Gee v. Estes*, 829 F.2d 1005, 1008 (10th Cir. 1987) (citation omitted).

[4]*United States v. McNeal*, 960 F. Supp. 245, 246 (D. Kan. 1997) (citing *United States v. Carlos*, 777 F. Supp. 858, 859 (D. Kan. 1991); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987)).

[5]*Untied States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

[6]*See* 18 U.S.C. § 3142(b), (c), (e).

U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[7]

The Bail Reform Act, specifically 18 U.S.C. § 3142(f)(1), recognizes a rebuttable presumption of risk of flight or danger to the community upon a finding that the crime charged in the present case is "a crime of violence." The presumption operates as follows:

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk of flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.[8]

"Thus the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."[9] The defendant's initial "'burden of production . . . is to offer some credible evidence contrary to the statutory presumption.'"[10] Thus, to rebut this presumption, a defendant must come forward with some credible evidence of something specific about his charged criminal conduct or about his

---

[7]18 U.S.C. § 3142(g).

[8]*United States v. Stricklin*, 932 F.2d 1353, 1354-44 (10th Cir. 1991) (citations omitted).

[9]*United States v. Holmes*, Case No. 05-40066-01-SAC, 2007 WL 293907, at *2 (D. Kan. Jan. 29, 2007) (quoting *United States v. Hare*, 837 F.2d 796, 798-99 (5th Cir. 1989) (footnote omitted)).

[10]*Id.* (quoting *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000)).

individual circumstances that tends to show that "'what is true in general is not true in the particular case.'"[11]

The parties agree that the presumption applies to the drug trafficking charges in this case.[12]

*Discussion*

The Court's ruling relies on the evidence that was introduced at the initial detention hearing before the magistrate judge, including the Pretrial Services Report, and on the extensive evidence submitted by proffer and admitted at the detention hearing conducted by this Court. This ruling further considers the parties' positions and arguments advanced both before the magistrate judge and this Court.

The Court finds that defendant has rebutted the statutory presumption of detention. Defendant has proffered that his immediate and extended family resides in San Francisco, and his family ties in China are limited to a distant cousin and an elderly aunt. Defendant's wife owns a successful trading company and she has submitted an affidavit that defendant is employed by that company to obtain inventory items from China, which defendant argues explains his extensive trips to China and access to large amounts of money. Defendant proffers that he does not have the financial means to flee without assistance from his wife, who has pledged that she will ensure he does not travel to China. Defendant's wife owns the family home valued at over $1 million free and clear of liens. This home along with the homes of his sisters-in-law, would serve as security for defendant's $2 million bond. Defendant proffers that

---

[11]*Id.* (quoting *United States v. Dominguez*, 783 F. 2d 702, 707 (7th Cir. 1986)).

[12]*See* 18 U.S.C. § 3142(e) (presumption arises upon finding of probable cause that defendant has committed a federal drug offense carrying a maximum prison term of ten years or more).

his family has benefitted from the "skyrocketing" values of real estate in San Francisco. Defendant has surrendered his passport and proffers that he cannot enter China without it. Defendant submits an affidavit of the Federal Public Defender in California who avers that, according to a representative at the Chinese Consulate, if a person is a United States Citizen, like defendant, he gives up any right to a Chinese passport and could only travel to China with a valid visa, which he cannot obtain without a valid United States passport. Defendant proffers that the cash transactions reflected in government's Exhibit E are legitimate and are comprised of several family members' cash reserves. Defendant proffers that many of these transactions were made in connection with debts related to his failed restaurant. Defendant denies that he has ever been to Canada, although he admits that he was denied entry. Defendant explains that when he told the Pre-Trial Services Officer in the Northern District of California that he had never "traveled" to Canada, he meant that he had never actually entered Canada.

Because the burden of proof remains with the government to show there is no condition or combination of conditions that would reasonably assure the accused's presence in later proceedings, the Court addresses the § 3142(g) factors and follows with its conclusion that the government has carried its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of defendant as required.

- **Nature and Circumstances of the Offense**

Because this offense involves drug trafficking, defendant concedes that this factor weighs in favor of detention.

The Court further finds that detention is supported by the government's proffer that the amount of property bond required by the magistrate judge is negligible when compared with proceeds generated by the drug trafficking organization. The government alleges, and the grand jury has found probable cause to believe, that the defendant is a member of a sophisticated organization which is trafficking various controlled substances throughout the United States and internationally. While the organization is headquartered in Vancouver, Canada, defendant is alleged to be one of two individual who lead the Los Angeles-based United States subsidiary of this syndicate. Defendant is also alleged to be a courier of cash between the United States and China.

The government proffers that the drug trafficking organization to which defendant belongs is responsible for over $341 million in drug proceeds. The government argues that, for a defendant generating huge amounts of profits in the drug trade, the threat of losing $1.5 million in equity in three homes is no threat at all, since they could easily be replaced with drug proceeds. The Court agrees, and finds that the proposed property bond is insufficient to guarantee defendant's appearance at future proceedings

- **Weight of the Evidence**

The government proffers three exhibits in support of this factor, which consist of statements made by three cooperating individuals who will purportedly identify this defendant as a high-ranking member of an international drug trafficking conspiracy. Exhibit F is a DEA

report of an interview with a cooperating witness who is expected to testify at trial and who identified defendant as a business partner of co-defendant Bo Feng in the drug trade since approximately 2001.  The witness asserted that defendant was known for distributing heroin from China and cocaine from South America.  The witness also told the agents about co-defendant Feng establishing a marijuana grow operation in the Los Angeles area, which was corroborated by DEA agents discovery of two separate grow operations in Los Angeles—one in Feng's home and the other in his business.

Exhibit G is a DEA report of an interview with Zhou Chen, who is also expected to testify at trial.  Chen, who pled guilty to charges relating to the June 2004 traffic stop in Kansas central to the conspiracy charge in this case, states that he observed defendant approving a shipment of marijuana and overheard conversations between defendant and Feng about drug shipments on ocean-going ships.  At the May 13, 2008 hearing, the government offered as rebuttal evidence Exhibit 3, a report dated December 29, 2004, detailing a secondary search of defendant on a return trip from Hong Kong on December 24, 2004.  One of the items in defendant's possession was a list of ship arrival and departure dates as well as frequencies for the ships' radios.

Finally, Exhibit H is a report by LAPD detective Don Barfield of a post-arrest statement given by co-defendant Chun Yuan. Yuan pled guilty in this matter and has expressed an interest in cooperating and has given a statement to agents in anticipation of being called as a witness at the trial of other defendants in this case.  In his post-arrest statement, Yuan describes a conversation he had with defendant after Cui Qin Zhang and Chen were arrested in Kansas transporting the cocaine and MDMA.  According to Yuan, defendant admitted during this

conversation to being aligned with Feng in the distribution of controlled substances. Yuan said that defendant told him he was in China at the time of Zhang and Chen's arrest in June 2004. This appears to be corroborated by Exhibit B, which shows defendant departing the United States for Singapore on May 21, 2004, and not returning to the United States until he arrived on a flight from Hong Kong on July 29, 2004. Yuan also told agents that defendant had visited him in China, while Yuan was in China visiting his mother in March 2004. This is also apparently corroborated by Exhibit B, which shows defendant departing San Francisco for Hong Kong on February 26, 2004, and returning to San Francisco from Hong Kong on March 16, 2004.

While these statements may not constitute overwhelming evidence, they nevertheless are substantial evidence of the defendant's guilt. This factor weighs in favor of detention.

- **History and Characteristics of Defendant**

This factor presents a mixed picture. Considerations in defendant's favor include the length of his residence in San Francisco and his responsibility for his numerous family members. On balance, however, this factor weighs in favor of detention. The government has proffered evidence of defendant's extensive history of international travel and his access to large amounts of cash. Since 2003, or reasonably close to the time frame charged in the Second Superseding Indictment, defendant made thirty-four trips either into or out of the United States. Most of these trips were between Hong Kong and San Francisco, but defendant also traveled to Seoul, South Korea and Singapore during this time period. Defendant has had six separate passport numbers assigned to him since 1992. The government contends that defendant insulated himself by serving as the "money guy" in the drug trafficking organization, and that his story about a failed business and subsequent depression is evidence of motive as well as a cover for his involvement

in the organization. While the government does not allege that defendant's family was complicit in drug trafficking, they certainly have played a role in granting defendant access to large amounts of cash. As demonstrated in Exhibit E, on approximately twenty occasions in the past ten years, either defendant or his immediate family members has been in possession of a sufficient amount of cash that the filing of a report with the United States Treasury Department was required. Regardless of whether these transactions were legitimate, the government has demonstrated that defendant routinely has access to large amounts of cash that would be useful in an effort to flee the Court's jurisdiction. This information supports detention.

The Court also gives weight to the fact that defendant was not truthful in at least one of his representations to the Pretrial Services Officer in the Northern District of California. Defendant was arrested by DEA agents in San Francisco. While in DEA custody, defendant was interviewed by a Pretrial Services Officer for the Northern District of California. This interview was conducted, with the consent of the defendant's attorney, in the presence of a DEA agent who was maintaining custody of the defendant prior to the defendant being remanded to United States Marshal Service custody. This agent, Jason Chin, listened to the conversation through a Cantonese interpreter and reported some of his observations to government's counsel. Because the conversation was taking place via a translator, the government concedes that there may be some disagreement about what exactly the defendant said with regard to some specific questions. According to Agent Chin, however, it was very clear that when the Pretrial Services Officer asked defendant about travel to Canada, the defendant told the Pretrial Services Officer that he had never traveled to Canada and that, on the only occasion he had tried, he had been refused entry. This statement by the defendant is refuted by Exhibit B, the records of his international

travel.  Entry number 24 on the summary of Exhibit B shows the defendant entering the United States at San Francisco, after arriving on a flight from Vancouver.

Defendant counters that he was denied entry to Canada and that he has never "traveled" to Canada.  Defendant thought the question "what other countries have you visited?" meant which countries he had actually entered and visited, not counties he had flown to but been denied entry.  Defendant argues that the government has heard an incomplete accounting of the interview third hand, and is simply mistaken about the accusations it makes.  Defendant's explanation is belied by rebuttal evidence offered by the government at the hearing, which places defendant in Vancouver.  Exhibit 2 is a summary of an FBI surveillance report prepared by Detective Barfield regarding a money laundering investigation.  A black Mercedes sedan was observed at the residence being investigated in Vancouver; the vehicle was intercepted by Canadian police on August 8, 2002 and the driver was identified as defendant.

Finally, the Court notes that defendant is a native of China and is currently a United States Citizen.  Both sides proffered conflicting accounts of whether defendant could obtain a Chinese passport under these circumstances.  At the May 13, 2008 hearing, the government offered as rebuttal evidence Exhibit 1, email correspondence to Mr. Mattivi from a source at the State Department, indicating that in his personal experience, the Chinese government recognizes persons born in China as citizens and will issue new passports for citizens even if courts have taken custody of their passports.  The government concedes that it cannot locate an official policy to this effect.  Given this uncertainty, the Court finds this also weighs in favor of detention.

- **Nature and Seriousness of the Danger to any Person or the Community**

Because defendant has no criminal history of violence, the government concedes that this factor weighs in favor of release. The Court notes, however, that the dangers of drug trafficking are well established.

Based upon its de novo review of the record and all arguments submitted, and after considering all of the § 3142(g) factors as well as the presumption in favor of detention, the Court concludes that no set of conditions of release will assure defendant's pretrial presence as required. The government has carried its burden of proving that pretrial detention is warranted in this case. Consequently, the Court reverses Magistrate Judge James's order of release and orders that defendant Kwan Lap Yu be detained pending trial.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's motion for pretrial detention (Doc. 147) is GRANTED. The magistrate judge's February 14, 2008 order setting conditions of release for defendant is reversed and set aside. Defendant Kwan Lap Yu is committed to the custody of the United States Marshal pending trial of this matter.

IT IS SO ORDERED.

Dated this 12th day of June 2008.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge